# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) |
| --- | --- |
|  | ) |
| v. | ) 1:11-cr-14 |
|  | ) 1:14-cv-47 |
| SANDRA ANN PRECHTEL | ) |

## MEMORANDUM OPINION

Pending before the Court is the MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (ECF No. 74), along with an amendment thereto (ECF No. 81), filed, *pro se*, by Defendant, Sandra Ann Prechtel. The government has filed a response in opposition to the motion, in which it seeks to enforce the collateral waiver in Defendant's plea agreement. Accordingly, the motion is ripe for disposition. For the reasons that follow, the Court will enforce the collateral waiver, and Defendant's motion will be denied.

### I. Background

On February 8, 2011, Defendant was charged in a nine-count indictment with six counts of mail fraud, in violation of 18 U.S.C. § 1341, and three counts of tax evasion, in violation of 26 U.S.C. § 7201. On October 5, 2012, Defendant pled guilty to counts six and seven (one count each of mail fraud and tax evasion). At that time, the Court was informed that the parties had entered into a plea agreement, which included a waiver of Defendant's right to file a direct appeal of her sentence, as well as to file a collateral attack under 28 U.S.C. § 2255. In the plea agreement, the parties agreed that Defendant's overall offense level under the United States Sentencing Guidelines was 24. Defendant further agreed to pay restitution to Abbott Furnace Company in the total amount of $1,106,403.78 and to the Internal Revenue Service ("IRS") in an

amount to be determined by the Court at the time of sentencing. On May 10, 2013, the Court sentenced Defendant to 51 months in prison and ordered her to pay the aforesaid amount of restitution to Abbott Furnace Company and $428,595.84 in restitution to the IRS

This case was originally assigned to now-former United States District Judge Sean J. McLaughlin, who conducted Defendant's change of plea hearing and sentencing hearing. Defendant filed her motion on February 14, 2014, which was after Judge McLaughlin's retirement. As a result, once the § 2255 was filed, the case was re-assigned to United States District Judge David S. Cercone. On December 3, 2015, however, the case was re-assigned to the undersigned for all further proceedings.

## II. Discussion

Defendant raises three grounds for relief in her motion. As noted, however, the government argues that Defendant's motion should be summarily denied because she waived her right to file a collateral attack. Without conceding that Defendant's waiver is invalid, the government also argues that the grounds for relief asserted by Defendant are without merit.

A waiver of the right to file a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 is enforceable if (1) it is "entered into knowingly and voluntarily" and (2) does not "work a miscarriage of justice." *United States v. Marby*, 536 F.3d 231, 237 (3d Cir. 2008). While Defendant has not specifically argued that her § 2255 waiver was not knowing and voluntary or that a miscarriage of justice will result from its enforcement, the Court "has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Id.*

With respect to the knowing and voluntary nature of the waiver, the Court has carefully reviewed the parties' plea agreement as well as the transcript of the change of plea hearing

conducted on October 5, 2012. The plea agreement, which bears Defendant's signature on page seven (7), indicates that Defendant waives her right to take a direct appeal and "further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking her conviction or sentence, and the right to file any other collateral proceeding attacking her conviction and sentence." At the change of plea hearing, Judge McLaughlin asked Defendant whether she had "an opportunity to read the plea agreement and discuss it with [her] lawyer[.]" She responded, "Yes, I have." Then she was asked whether she understood "the terms and conditions[.]" She again responded, "Yes." She was also asked whether she understood "that by virtue of the terms of the plea agreement, [she had] waived [her] right to collaterally attack these proceedings through a Habeus Corpus petition." Once again, her response was "Yes." Taking the questioning one step further, Judge McLaughlin gave Defendant an example: "for instance," he explained, "you couldn't argue that you should get some relief on appeal because your lawyer was ineffective, do you understand that?" Defendant answered, "Yes." In light of this line of questioning in open court, and absent any argument from Defendant to the contrary, the Court is convinced that Defendant's waiver was knowing and voluntary. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Defendant has not alleged any basis for the Court to reach a different conclusion.

The Court must now address whether enforcing the waiver would work a miscarriage of justice. The United States Court of Appeals for the Third Circuit has "adopted a common sense approach" to this inquiry. *Marby*, 536 F.3d at 242. To decide whether enforcing a waiver of the ability to file a collateral attack works a miscarriage of justice, the Court should consider "'the clarity of the [alleged] error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the

impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" *Id.* at 242-43 (quoting *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001)). "Courts apply the miscarriage of justice exception sparingly and without undue generosity, but with the aim of avoiding manifest injustice." *United States v. Castro*, 704 F.3d 125, 136 (3d Cir. 2013) (internal quotation marks and citations omitted).

The Court finds, under the facts and circumstances of this case, that enforcing Defendant's waiver would not result in a miscarriage of justice. Defendant has not credibly alleged that counsel was "ineffective or coercive in negotiating the very plea agreement that contained the waiver." *Mabry*, 536 F.3d at 243. As the Court of Appeals has said, "a waiver does not 'become[] unenforceable simply because a defendant "claims" . . . ineffective assistance,' but only 'if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious.'" *United States v. Akbar*, 181 F. App'x 283, 286 (3d Cir. 2006) (quoting *United States v. Monzon*, 359 F.3d 110, 118-19 (2d Cir. 2004)). The Court's review of the record reveals that such circumstances were not present here.

Because Defendant knowingly and voluntarily waived her right to file a § 2255 in her plea agreement and the enforcement of her waiver will not result in a miscarriage of justice, the waiver will be enforced. That being so, the Court need not reach Defendant's substantive arguments. However, assuming for the sake of argument that Defendant had not waived her right to file the instant motion, she would still not be entitled to any relief.

Defendant raises three separate grounds for relief in her brief, though her two substantive grounds are interwoven with her claim of ineffective assistance of counsel. To wit, Defendant argues that her counsel was ineffective for "fail[ing] to seek the best possible 'agreement' for defendant due to insufficient evidence on her behalf. Counsel failed to argue the amount of loss

attributable to her in the case. All the enhancements were unconstitutional and without merit. The charge of Mail Fraud was erroneous, since no Mail Fraud ever occurred[.]" Whether these allegations are assessed through the prism of an ineffective assistance of counsel claim or on their own merits, they are wholly meritless.

With respect to the claim of ineffective assistance of counsel, Defendant must establish both (1) that counsel's performance was deficient; and (2) that there was actual prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). Aside from the paragraph quoted above, Defendant's allegations of ineffective assistance are nearly unintelligible. She argues, for example, that her counsel failed "to investigate, develop, present any mitigating factors, variances, and argu[e] the erroneous enhancements by going to trial and have the government prove beyond a reasonable doubt that the enhancements and or 'elements' which constituted the elevated sentence was unlawful and unconstitutional." ECF No. 75 at 3. These conclusory allegations, even when liberally construed, are belied by the record, which establishes that Defendant's counsel performed more than competently. Defendant's counsel, for example, presented an impassioned plea on her behalf in a 24-page position statement with respect to sentencing factors, in which he sought a variance to five years' probation from the applicable Guidelines range of 51 to 63 months in prison. Counsel also contested the amount of restitution that Defendant owed to the government. This conduct did not fall below the level envisioned by *Strickland*. And, as will be discussed further below, the substantive arguments raised by Defendant in her § 2255 – that she baldly alleges her counsel should have raised – are without merit, so she was not in any way prejudiced by counsel's failure to raise them.

Turning to those substantive claims, Defendant first argues, "[p]er the offense conduct charged by the government, the defendant in no way used the MAIL to purposely defraud

5

anyone[.] [T]his was never argued and proved." ECF No. 75 at 4. "The substantive elements of mail fraud under 18 U.S.C. § 1341 are: (1) the existence of a scheme to defraud; (2) the use of the mails – whether the United States Postal Service or a private carrier – in furtherance of the fraudulent scheme; and (3) culpable participation by the defendant, that is, participation by the defendant with specific intent to defraud." *United States v. Dobson*, 419 F.3d 231, 237 (3d Cir. 2005) (internal citations omitted).

Defendant appears to suggest that the evidence failed to satisfy the second element – i.e., that she used the mails to further her fraudulent scheme. She purports to find support for this argument in *United States v. Tarnopol*, 561 F.2d 466 (3d Cir. 1997).

Defendant's argument is unavailing. "A scheme to defraud need not contemplate the use of mails as an essential part of the scheme so long as the mailing is 'incident to an essential part of the scheme.'" *United States v. Yusuf*, 536 F.3d 178, 187 (3d Cir. 2008) (quoting *Schmuck v. United States*, 489 U.S. 705, 710–11 (1989)). The mailing must, in other words, be "'sufficiently closely related' to the scheme to bring the conduct within the statute." *United States v. Tiller*, 302 F.3d 98, 101 (3d Cir. 2002) (citing *United States v. Maze*, 414 U.S. 395, 399 (1974)). Defendant's use of the mail – sending checks from her employer through the mail, which she had signed and, on occasion, endorsed with the company stamp, to pay off her personal credit cards – satisfied this requirement. *See, e.g.*, *United States v. Laljie*, 184 F.3d 180, 188 (2d Cir. 1999) (holding that "the evidence showing that [the defendant] mailed the checks drawn on [her boss's] account to her creditors, thereby causing those institutions to credit the [the defendant's] accounts with those payments, was ample to establish use of the mails in furtherance of [the defendant's] fraudulent scheme").

*Tarnopol* says nothing to convince this Court otherwise. In that case, the Court of

Appeals distinguished between certain "routine mailings" that "are regularly employed to carry out a necessary or convenient procedure of a legitimate business enterprise," *id.* at 472, and mailings that are made "for the purpose of executing the fraudulent scheme," *id.* at 471. It found that packing slips received by the defendants fell within the former category since they were sent part of "a routine business procedure which was uniformly followed in the case of all sales, whether or not they were involved in the scheme to defraud." *Id.* at 472. Here, by contrast, the checks were sent for one purpose and one purpose only: furthering Defendant's fraud.

Defendant's next contention is that certain sentencing enhancements were improperly applied. The Court disagrees. First of all, Defendant stipulated to each of these enhancements. Since she has not shown that she entered into the plea agreement involuntarily or unknowingly, she will not be permitted to back away from her express agreement now.[1] Even if the Court were to ignore the fact that Defendant stipulated to the application of these enhancements, the Court would have no basis to conclude that they should not have been applied. In particular, Defendant takes issue with the application of the 16-level enhancement for the amount of loss pursuant to § 2B1.1(b)(1)(I) of the Guidelines. As already noted, however, Defendant stipulated to this amount of loss in her plea agreement, and he has offered no explanation, let alone factual support, for her assertion that the amount of loss was somehow less than what she agreed to.

Defendant also argues that the position-of-trust enhancement in § 3B1.3 should not have

---

1. According to Defendant, she was not among the "parties" who stipulated to the amount of loss (and the other enhancements discussed *infra*). Rather, she argues, the parties referred to in the PSI Report are the government and her attorney, who purportedly entered the stipulation her "acknowledgment." ECF No. 75 at 5. These stipulations, however, were clearly spelled out in Defendant's plea agreement with the government. Defendant then stated in open court at the change of plea hearing that she read the plea agreement, understood its terms and conditions, and fully agreed with them. Her statements, as noted already, "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 73-74. "In other words, 'absent clear and convincing evidence to the contrary, a court must presume the veracity of a defendant's statements made while under oath in open court.'" *United States v. Jackson*, No. CR 10-233, 2015 WL 1000089, at *1 (W.D. Pa. Mar. 5, 2015) (quoting *Morris v. United States*, No. 04–1570, 2008 U.S. Dist. LEXIS 31295, at *14, 2008 WL 1740679 (D. Del. Apr. 16, 2008)). Defendant's bald statements that she did not actually agree to the stipulations in the plea agreement are insufficient to overcome her clear statements to the contrary in open court.

been applied because, although she did "report wages and information on W-2 forms, she was not in control of the books and records of the company" as is stated in the PSI Report ¶ 35. That is because there was apparently an accountant overseeing her work. Even if true, these facts would not render the enhancement inapplicable. Defendant does not dispute that, as the controller of Abbott Furnace Company, she could write checks to pay for company expenses, make bank deposits on behalf of the company, and make accounting entries. As such, as she stipulated, she occupied a position of trust in the company. It is of no moment that she did not "control" the company and may have, as she alleges, had an accountant at times auditing her work. *See United States v. Deal*, 147 F.3d 562, 563-64 (7th Cir. 1998) ("Nor do we think it important that Deal's autonomy was not complete. No one who is entrusted with large amounts of money is trusted completely. A company's books are usually audited by an outside accountant, implying that even the company's chief financial officer is not trusted fully."). If anything, her position appears to have "enabled [her] to doctor the books and by doing so to throw the auditors off the scent." *Id.*

Finally, Defendant objects to the application of the two specific offense characteristic enhancements because the enhancements were not proven beyond a reasonable doubt to a jury, as she claims is required by *Alleyne v. United States,* --- U.S. ----, 133 S. Ct. 2151 (2013). The sentencing judge did not, however, run afoul of *Alleyne* when he made these findings (which were, again, based on a stipulation by Defendant) since "they only 'influence[d] the sentencing judge's discretion in imposing an advisory Guidelines sentence' and resulted in a sentence 'within the statutorily prescribed range.'" *United States v. Staton*, 605 F. App'x 110, 117 n.13 (3d Cir. 2015) (quoting *United States v. Freeman*, 763 F.3d 322, 335-36 (3d Cir. 2014)).

To summarize, not only did Defendant validly waive her right to file a § 2255 motion, but

the grounds asserted in her motion would not provide any basis for granting her the requested relief had she not done so. The Court also notes that, to the extent Defendant is seeking to have the amount of her restitution reduced, § 2255 "'is not available to . . . challenge only fines or restitution orders.'" *United States v. Walker*, 149 F. App'x 55, 57 (3d Cir. 2005) (quoting *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999)). Defendant also alleges that the Federal Bureau of Prisons ("BOP") is not meeting her health needs because the facility where she is incarcerated is overpopulated and that certain "funds that were set aside for her continued chronic care . . . were confiscated." ECF No. 81-1. These allegations, if true, are certainly unfortunate. But the Court is without the power to address them under § 2255. Challenges to the manner in which a sentence is executed by the BOP must be asserted under 28 U.S.C. § 2241, and, even under that statutory section, such claims are only cognizable if the incarcerated person establishes "that BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment." *Cardona v. Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012). That does not appear to be the case here.

**III.    Conclusion**

For all of the reasons hereinabove stated, the MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (ECF No. 74) will be **DENIED**. A certificate of appealability will not be issued pursuant to 28 U.S.C. § 2253 because Defendant has not made a substantial showing of the denial of a constitutional right; reasonably jurors would not find the Court's enforcement of Defendant's collateral waiver "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, (2000). An appropriate order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) 1:11-cr-14 ) 1:14-cv-47 |
| SANDRA ANN PRECHTEL | ) ) |

## ORDER

**AND NOW**, this 17th day of December, 2015, in accordance with the foregoing Memorandum Opinion, is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Defendant's MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (ECF No. 74) is **DENIED**.

Civil Action No. 1:14-cv-47 shall be docketed **CLOSED**. No certificate of appealability shall issue.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: **Sandra Ann Prechtel**
32778-068
FMC - Carswell
PO Box 27137
Fort Worth, TX 76127
*Pro Se*
(via First Class U.S. mail)

**Marshall J. Piccinini**
Email: marshall.piccinini@usdoj.gov

(via CM/ECF)